IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| ARZEALAR M. MCGUIRE,  ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | 6:14-cv-02015-LSC | |
| ) | | |
| 3M COMPANY, ) | | |
|     Defendant. ) | | |
| ) | | |
| ) | | |

MEMORANDUM OF OPINION

Before the Court is a motion for summary judgment filed by Defendant 3M Company ("3M"). Plaintiff Arzealar M. McGuire ("McGuire") filed this suit making an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq ("Title VII") and 42 U.S.C. § 1981. McGuire's claim stems from the termination of her employment with Defendant 3M on August 8, 2012, which she claims was based on race. For the reasons stated below, 3M's Motion is GRANTED.

I.   BACKGROUND

Arzealar McGuire began working for 3M's Guin, Alabama manufacturing facility in February 1991 and was eventually fired on August 8, 2012. During her employment, McGuire worked in the Specialty Additives/Bubbles factory where

she held the positions of Flame Former/Warehouse Service Operator, Team Lead of the Flame Former/Warehouse Service Operators, and Mill Operator. During her approximately twenty years at 3M, McGuire received corrective action for multiple conduct issues, and 3M provided McGuire with many opportunities to improve upon those issues.

Specifically, her disciplinary history includes an incident report for falling asleep on the job, a five day suspension for both making sexually charged comments in the workplace and falsifying 3M's overtime records, a verbal warning for poor attendance, a three day suspension for continued poor attendance, a verbal warning for violating 3M's badge policy, a verbal warning for unsatisfactory job performance, and a five day suspension for leaving work without proper permission. McGuire disputes the facts relating to some of these incidents. She claims that she did not violate the badge policy, that she did not falsify documents, and that she was not required to receive permission to leave her job. However, she does not dispute being disciplined regarding these actions, and she does not argue that these actions were motivated by discrimination.

The incident that ultimately led to McGuire's termination occurred on July 15, 2012. McGuire was asked to work in the Bubbles factory from 3:00 p.m. to 11:00 p.m. after another employee said he was not going to work his shift. Tony Crump,

another 3M employee, was on the schedule at the same time to work at the Maker 23 position at the Pavement Marking factory. What happened when Crump arrived at the facility is in dispute. 3M claimed that McGuire told Crump that he could not work in the Maker 23 position, saying, "Hell no. You can't come in on no marker [sic] … You have to go to the mill or we have to go home. One of us [will] have to go home."[1] (Doc. 24-1 at 13). This prompted Crump, "based on McGuire's unauthorized instruction," to work in the Bubbles factory rather than in the Pavement Marking factory where he was scheduled to work. Because of McGuire's "unauthorized interference," 3M claims that it suffered "coverage issues that disrupted production" through a temporary shutdown of machines. Additionally, 3M says it was forced to find a replacement equipment operator in the Pavement Marking factory, incurring overtime expenses in the process.

McGuire, however, claims that when she encountered Crump, she told him, "'no, you can't come in on the maker,' — or I said, 'Hell, no. You can't come in on no maker.' And he — I said, 'You have to go to the mill or we have to go home.' One of us have to go home. And he said, 'Why?' I said, well because we forcing somebody in — said somebody in the department. I said, 'So one of us have to go

---

[1] McGuire does not dispute saying this. Instead, she disputes what this statement meant and how Crump interpreted it.

home,' and I said take it up with the leader, and I left it like that and went and got dressed." McGuire does not characterize what she said as an instruction to Crump.

McGuire additionally submitted an affidavit from Crump in which he stated that McGuire did not instruct him to go to another position. Rather, he says that he used his "own judgment based on 3M Company's past customs, practices, and policies" in going to a different location. (Doc. 27-1 at 4). Further, Crump states that 3M did not experience any work stoppage or productions shutdown.

After this incident with Crump, 3M, in accordance with its normal policy, held a fact finding meeting to determine what happened.  A team made up of Plant Manager Rodney Northam, Product Manager Mike Turner, Production Supervisor Eric Estill, Product Manager Richard Wates, and Human Resources Manager Matthew Collins began to investigate McGuire's conduct. The team took statements from McGuire, Crump, Team Leads in the Bubbles and Pavement Marking factories, Aleta Dozier, Lisa Thompson, and other employees. According to 3M, this investigation yielded statements from Crump, Dozier, and Thompson that McGuire instructed Crump to work in the Bubbles factory and that her interference caused the company to incur overtime expenses and to suffer a temporary shutdown of machinery. The team decided to terminate McGuire on August 8, 2012 for unsatisfactory job performance. 3M explained that this decision

was the product of McGuire's disciplinary history, which included numerous incidents of disciplinary action in the twenty-six moths prior to her termination, including three suspensions.

McGuire testified in her deposition about fourteen white employees whom she claims were disciplined less severely than her. However, she either admitted that she did not know the disciplinary history of thirteen of those employees or she did not provide any evidence of their disciplinary histories. The closest statement she made regarding one employee's disciplinary history was that Pat Roberts called in multiple times and told her supervisor that she could not work. Yet, McGuire did not know Roberts's reasons for being unable to work.

Finally, McGuire also submitted an affidavit from Gerry Whitman, a 3M employee and former Union Representative at 3M. Whitman stated that he sat in a meeting with Nina Thompson, another 3M employee, while she discussed performance issues with 3M management. During the meeting, Whitman states that Nina Thompson said that she heard Estill use racial comments when referring to African-Americans.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine where there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id*. Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III. DISCUSSION

McGuire argues that her termination from 3M was based on race in violation of both Title VII and § 1981. The analysis for Title VII and § 1981 is the same, as "the legal elements of the claims are identical." *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). The standard in a given discrimination case differs depending on whether a plaintiff produces direct evidence of discrimination or circumstantial evidence sufficient to allow an inference of discrimination. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641–643 (11th Cir. 1998). McGuire has produced no direct evidence that she was fired because of her race, and relies instead on circumstantial evidence that similarly situated white coworkers were treated with more leniency than she was afforded.

In Title VII and § 1981 cases where a plaintiff relies on circumstantial evidence, the Eleventh Circuit generally applies the burden-shifting scheme first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff carries the initial burden of producing circumstantial evidence sufficient to prove a *prima facie* case of discrimination. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). If the plaintiff meets this burden, then the burden shifts to the defendant to produce evidence of a "legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant

produces evidence of a legitimate reason, then "the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." *Id.* The plaintiff's burden to establish pretext applies to all of the defendant's proffered reasons. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). Thus, when a defendant proffers more than one reason, a plaintiff fails to meet this prong if she only establishes pretext as to one of those reasons. *Id.*

### A.   The Prima Facie Case

To establish a *prima facie* case, McGuire must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified to perform the job; and (4) similarly situated employees outside of her protected class were treated more favorably. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The parties do not dispute that McGuire is a member of a protected class, that she suffered an adverse employment action, or that she was qualified for her job. However, the parties dispute whether similarly situated employees of other races were treated more favorably.

McGuire presented evidence of fourteen other employees whom she maintains engaged in similar misbehavior but were not disciplined as severely. Even viewing the evidence of these fourteen employees in the light most favorable to

McGuire, they are not sufficient comparators. The only evidence McGuire presents on these fourteen employees is her deposition testimony. However, McGuire either admits she does not know the disciplinary histories of thirteen of the employees or she does not provide any evidence of their disciplinary histories. Specifically, McGuire has not provided any evidence of an employee who was disciplined for sleeping on the job, making sexually inappropriate comments, falsifying overtime records, engaging in sustained attendance misbehavior, violating company badge policy, and leaving work in violation of the company's relief policy. Because McGuire had an extensive disciplinary history and it contributed to her termination, a proper comparator should likewise have an extensive disciplinary history. Although she does not have to prove that a comparator engaged in identical misbehavior, she is required to show, at least, that her comparator was "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

McGuire did testify in her deposition that the fourteenth employee, Pat Roberts, called in multiple times and told her supervisor that she could not come to work. Even if this was evidence of Roberts's disciplinary history, McGuire fails to show how Roberts's actions were comparable to hers. McGuire does not know what reasons Roberts gave for not coming to work, and thus, she has not shown

why Roberts's conduct violated 3M policies. Having failed to present evidence of a sufficient comparator, McGuire has failed to establish a *prima facie* case of discrimination. Accordingly, 3M's Motion for Summary Judgment is due to be GRANTED on Plaintiff's Title VII and Section 1981 claim.

### B.     Proffered Legitimate Reasons and Pretext

Even if McGuire could establish a *prima facie* case of discrimination, she has failed to show that 3M's legitimate nondiscriminatory reasons for terminating her were pretextual. 3M's proffered reasons for terminating McGuire are her "long-standing poor performance and misconduct," including the July 15, 2012 incident.

Because 3M met the burden of producing a legitimate, non-discriminatory reason for termination, the burden shifts back to the McGuire to show that 3M's proffered reason is mere pretext for illegal discrimination. *See Turlington*, 135 F.3d at 1432. Pretext can be demonstrated "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "When a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to whether the employer gave an honest explanation of its

behavior.'" *Kragor*, 702 F.3d at 1310–1311.

McGuire argues that 3M's legitimate nondiscriminatory reasons for terminating her are pretextual for five reasons. Four of these reasons are an attempt by McGuire to contest 3M's version of the July 15, 2012 incident, and the fifth reason is an allegation that her supervisor made inappropriate racial comments in the past. First, McGuire denies that she instructed Crump to work in a different area, which would have overstepped her authority. Second, she alleges that her supervisors were aware of her actions on July 15, 2012 shortly after they occurred and tacitly sanctioned them. Third, McGuire asserts that 3M improperly disciplined her for the July 15, 2012 incident. Fourth, she disputes 3M's claim that it incurred work stoppage from the July 15, 2012 incident.  Finally, she claims that, according to a coworker, one of the decision makers involved in her firing used racial epithets to refer to African-Americans.

However, even if McGuire's characterization of the July 15, 2012 incident is correct, she has still not demonstrated that the management team who investigated it was not truthful in finding that she overstepped her authority. 3M submitted the following as an undisputed fact:

> During their investigation, Northam, Turner, Estill, Wates, and Collins obtained statements from McGuire, Crump, Aleta Dozier (a Team Lead in the Bubbles factory), Lisa Thompson (a Team Lead in the Pavement Marking factory), and other employees. Crump, Dozier,

and Thompson reported that McGuire instructed Crump to work in the Bubbles factory and that her interference forced the Company to temporarily shut down machinery and to incur overtime expenses.

(Doc. 24-1 at 14, ¶ 37). McGuire disputes the facts in this paragraph, but she does not provide a basis for her dispute.[2] In later paragraphs, she cites to an affidavit from Crump in which he states that McGuire did not instruct him on where to work and the incident caused no shut down, but she does not provide any evidence contradicting 3M's assertions as to Dozier and Lisa Thompson. Without evidentiary support for her dispute as to Dozier and Lisa Thompson's accounts of the incident, the Court cannot find that it is in dispute. Accordingly, those two employees undisputedly reported that McGuire instructed Crump to work in the Bubbles factory and that her actions caused a machinery shutdown.

As such, McGuire has not cast doubt on 3M's veracity when it relied on these employees' reports in terminating McGuire. To show pretext, McGuire must show that 3M was not truthful when it says that it relied on the July 15, 2012 incident to terminate her. McGuire failed to do this. At most, McGuire disputes what actually happened in the incident, but what actually happened is not necessarily relevant to pretext. She did not dispute that 3M got statements from

---

[2] The Court's Uniform Initial Order (Doc. 9) requires that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." McGuire neither explained her dispute nor provided a citation to the evidentiary record.

Dozier and Thompson evidencing that McGuire overstepped her authority, and as a result, she did not show that their reliance on this statements is "unworthy of credence." *Kragor*, 702 F.3d at 1308.

Finally, although McGuire provides evidence that Estill used a racial epithet at some point in time, it is inadmissible hearsay. The evidence is an affidavit from Whitman in which he recounts hearing Nina Thompson say that she heard Estill use a racial epithet.[3] Although the alleged statement by Estill is potentially not hearsay—either because it is not being offered to prove the truth of the matter asserted or because it is an opposing party's statement, *see* Fed. R. Evid. 801—Nina Thompson's statement to Whitman is hearsay. McGuire is offering Nina Thompson's statement, which was made outside of court, to prove the truth of the matter asserted, that Estill made this statement. Because a party may not use inadmissible hearsay to defeat summary judgment, the Court will not consider Estill's alleged use of a racial epithet. *See* Fed. R. Civ. P. 56(c) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be

---

[3] McGuire does not even state what this racial epithet was. Even if it was not hearsay, the Court would be very reluctant to rely on some unknown statement that may have been racial in nature to show pretext—particularly when Estill was only one person on the five person team investigating the matter.

considered on a motion for summary judgment.'") (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).

### C. Reasonable Inference of Discrimination

Finally, McGuire argues that the Court should not use the *McDonnell Douglas* framework in this case. Instead, she argues that the Court should deny summary judgment even in the absence of a comparator because enough circumstantial evidence has been presented to create a "reasonable inference of intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 28 (11th Cir. 2011) (allowing a claim to survive summary judgment when a plaintiff "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent"). Even if the Court followed this approach, McGuire has only presented one argument concerning the facts. She disputes 3M's characterization of the July 15, 2012 incident, specifically whether she instructed Crump to work elsewhere and whether this caused work stoppage. However, this alone is not enough to create a reasonable inference of intentional discrimination because, as stated above, this dispute does not show that 3M was untruthful when it terminated McGuire for the July 15, 2012 incident and her long disciplinary history. Further, the only evidence of any type of racial animus is inadmissible hearsay. Accordingly, McGuire has not presented enough evidence to create a

reasonable inference of discrimination to persuade the Court to stray from the *McDonnell-Douglas* framework.

## IV. CONCLUSION

McGuire failed to both prove a *prima facie* case of discrimination and demonstrate pretext as to 3M's proffered reasons for terminating her. Further, McGuire has not presented evidence to create a reasonable inference of discrimination. As a result, 3M's motion for summary judgement is GRANTED, and McGuire's claims are dismissed. A separate order will be entered.

Done and Ordered this 1st day of August 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
182185